IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dominique Martinez,<br><br>             Petitioner,<br><br>vs.<br><br>Charles Ryan, et al.,<br><br>             Respondent. | No. CV 12-0254-TUC-JGZ (BPV)<br><br>**REPORT AND<br>RECOMMENDATION** |

On April 9, 2012, Petitioner, Dominique Martinez, an inmate confined in the Arizona State Prison Complex-Rincon Unit, in Tucson, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus by a Person in State Custody, pursuant to Title 28, U.S.C. § 2254 ("Petition"). (Doc. 1.) Respondents have filed an answer to the Petition ("Answer") with exhibits A through U attached. (Docs. 10-11.) No reply was filed.

The case has been referred to Magistrate Judge Velasco for all pretrial matters pursuant to Local Civil Rule 72.2. Rules of Practice of the U.S. District Court for the District of Arizona.

For the reasons discussed below, the Magistrate Judge recommends that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED and DISMISSED WITH PREJUDICE.

# I.   BACKGROUND

## A. Trial Court Proceedings

For a summary of the preliminary facts, the Court relies on the state appellate court's decision:[1]

> Martinez was indicted in August 2006 for illegally conducting an enterprise. The state alleged the enterprise had as its goals "[o]btaining money and property through various illegal methods including . . . transporting illegal drugs . . . for sale; kidnapping others believed to be drug dealers for purposes of robbery and/or extortion; auto thefts and burglaries." Martinez was also charged with twenty-seven other crimes related to the enterprise, arising from four events we describe below.

> ### (1) Crimes related to the murder of Tony Cornejo

> Tony Cornejo owned a tire store in Phoenix and supplied marijuana to Martinez's father. On the pretext of buying marijuana from him, Martinez and Roberto Solano drove to Phoenix, intending to kidnap Cornejo. Lucy Vera, who worked for Cornejo, saw Martinez, Cornejo, and others at Cornejo's tire shop on July 23, 2005.

> The next day, Martinez and Solano again came to Cornejo's store and found Cornejo and Juan Ceniceros-Lopez there. After Cornejo, Solano, and Martinez talked for a few minutes, they got into an argument. Solano and Martinez pulled out guns, beat Cornejo and Ceniceros-Lopez, and threatened to kill them. Another person, Daniel Escajeda, arrived at the tire shop, and Solano attacked him as well. Solano and Martinez took from Ceniceros-Lopez two wallets, one belonging to him and the other to his brother. They told Ceniceros-Lopez they were going to kill Cornejo and leave the wallets near his body in order to implicate Ceniceros-Lopez. Martinez and Solano then left, taking Cornejo with them.

> Vera then received several telephone calls from Cornejo and others,

---

[1]   Statements drawn from state appellate court's decision are afforded a presumption of correctness that may be rebutted only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *State v. Runningeagle*, 686 F.3d 758, 762, n.1 (9th Cir. 2012); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

indicating Cornejo had been kidnapped and the kidnappers wanted a quantity of marijuana as a ransom. Vera, Escajeda, Manuel Chavez, and Juan Penuelas began gathering the marijuana needed for the ransom. Vera then drove to Tucson in Chavez's truck, carrying approximately five hundred pounds of marijuana. She took the truck to the hotel designated as the meeting spot, rented a room, and left the truck in the parking lot. She saw Martinez arrive in a truck she had seen the previous day at Cornejo's shop. After a few minutes, both Martinez's truck and the truck Vera had taken to Tucson were driven away.

That night, Jesus Mendivil saw Solano arrive at Martinez's house in Tucson with a truck loaded with marijuana. Mendivil and Solano left in another vehicle to meet Martinez, taking with them an assault rifle and pistol. When they met Martinez, Cornejo was in his truck. Solano then shot Cornejo and left, leaving Martinez and Mendivil with Cornejo's body. Martinez told Mendivil to push the body out of the truck, and Mendivil did so. The two men then returned to Martinez's house. When police found Cornejo's body, they found next to it wallets belonging to Ceniceros-Lopez and his brother. Nearby they also found a black vinyl bag containing Martinez's identification.

Related to these events, a grand jury charged Martinez with aggravated assault with a deadly weapon, armed robbery, aggravated robbery, and threatening and intimidating, naming Ceniceros-Lopez and Escajeda as victims. The grand jury also charged Martinez with the kidnapping, aggravated assault, armed and aggravated robbery, and first-degree murder of Cornejo. Martinez also was charged with threatening and intimidating Cornejo's wife, Yssenia, based on a telephone conversation she had with one of Cornejo's kidnappers, who instructed her not to call the police.

*(2) Assault and Attempted Robbery of Vincente Sandoval*

Vincente Sandoval worked with Martinez in the criminal enterprise from early 2002 through mid-2004. They stopped working together after having a disagreement concerning a load of marijuana for which Sandoval was unable to pay. On September 23, 2005, Martinez sent Armando Medrano and Solano to take Sandoval's Jaguar car as payment for the debt. Jacob Martinez, Martinez's cousin, drove Solano and Medrano to Sandoval's home. They attacked Sandoval, hitting him with their guns. During the struggle, however, the magazine fell out of Solano's gun, and Solano, Medrano, and Jacob Martinez then left empty-handed. For these

offenses, the grand jury charged Martinez with attempted armed robbery, aggravated assault with a deadly weapon, and aggravated assault causing temporary but substantial disfigurement.

### (3) Crimes related to the kidnapping of Clive Cook-Tracey

A few days after the incident with Sandoval, Martinez and Solano went to a house in Tucson after receiving information that money was hidden there. Clive Cook-Tracey and his cousin, Albert Walker, were staying at the house, and they arrived while Martinez and Solano were there. After Martinez and Solano found no money in the house, they beat both men and kidnapped Cook-Tracey in order to get ransom money from him. Walker escaped.

Martinez left in his truck with Cook-Tracey, while Solano drove Cook-Tracey's rental car. Martinez met Solano and Medrano at a convenience store, and the three men then took Cook-Tracey to his bank and forced him to withdraw money, which he gave to Martinez. Solano took Cook-Tracey to his house and continued to hold him captive until Cook-Tracey escaped later that night. Related to this incident, the grand jury charged Martinez with first-degree burglary, aggravated assault with a deadly weapon of Walker and Cook-Tracey, theft of a means of transportation, kidnapping, armed robbery, and attempted armed robbery.

### (4) Attack on Mark Morlock

Tucson police sergeant Mark Morlock responded to the call reporting Cook-Tracey's kidnapping. He was directed to a location where police had located a signal from Cook-Tracey's cellular telephone. While Morlock waited there, Solano approached Morlock, pointed a gun at him, and pulled the trigger, but the gun twice failed to fire. After the two men exchanged gunfire, Morlock fled, and Solano drove away in Morlock's police vehicle. Solano took the contents of Morlock's vehicle, including his gun and badge, to Martinez.

The grand jury charged Martinez with aggravated assault on a police officer with a deadly weapon, theft of a means of transportation, and trafficking in stolen property. Martinez was arrested on September 30, 2005. Solano killed himself the next day, after being cornered by pursuing police officers. After a twenty-three-day trial, the jury found Martinez guilty of all remaining counts except the two robbery charges naming Escajeda as the victim. The trial court sentenced Martinez to life

imprisonment without the possibility of parole for twenty-five years on the murder conviction. The court ordered the remaining prison sentences, totaling 19.25 years, be served concurrently with Martinez's life sentence.

(Ex. A, Memorandum Decision (Sept. 30, 2010), at ¶ 2-13.) (Ariz. App.) (footnotes omitted). The trial court entered a directed verdict dismissing the threatening and intimidating charge. *Id.* at ¶7, n.1-2.

B.  Appeal

On February 10, 2010, Petitioner filed an opening brief in the Arizona Court of Appeals, raising six grounds for relief: (1) Petitioner was deprived of due process and a fair trial as a result of prosecutorial misconduct; (2) joinder of the individual counts with the criminal enterprise count was improper and prejudicial and denied Petitioner a fair trial; (3) the trial court erred in not granting Petitioner's motion to dismiss counts on lack of venue; (4) the trial court erred in allowing the introduction of the "drug ledger"; (5) the trial court erred by allowing out-of-court statements into evidence; and (6) Lucy Vera's identification of Petitioner created a substantial likelihood of misidentification and denied Petitioner due process of law. (Ex. D, Opening Brief.) The court of appeals vacated the convictions and sentences for the aggravated assaults of Ceniceros-Lopez and Escajeda, finding that Pima County was not the proper venue in which to try those charges. *Id.* at ¶¶ 50–51. The court affirmed all of Martinez's remaining convictions and sentences. *Id.* at ¶ 66. The Arizona Supreme Court denied Petitioner's petition for review on April 20, 2011. (Exs. B, C.)

C. Petition for Post-Conviction Relief

Petitioner did not file a petition for post-conviction relief. (*See* Petition at 3; Answer, at 5.)

D. Federal Habeas Petition

Petitioner's federal habeas petition was placed in the prison mailing system on April 3, 2012. (Petition at 11.) Petitioner raises six grounds for relief in the Petition. In Ground One, Petitioner alleges that he was denied due process and a fair trial by prosecutorial misconduct in violation of the Fifth, Sixth, and Fourteenth Amendments. In Ground Two, Petitioner alleges that the trial court abused its discretion and violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by denying severance of counts. In Ground Three, Petitioner alleges that he was denied a fair trial and due process in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by denying him a new trial. In Grounds Four and Five, Petitioner alleges that he was denied a fair trial, due process, and the right to confront witnesses in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. In Ground Six, he alleges that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated by the admission of identification evidence.

## II.   DISCUSSION

A. Standard of Review

Because Petitioner filed his petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA").

B.  <u>Statute of Limitations</u>

Under the AEDPA, a state prisoner must generally file a petition for writ of habeas corpus within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A).

C.  <u>Exhaustion of State Remedies</u>

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277–78 (1971). If a habeas claim includes new factual allegations not presented to the state court, it may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz.R.Crim.P. 32.2(a)(3). The preclusive effect of Rule 32.2(a)

may be avoided only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and the petitioner can justify why the claim was omitted from a prior petition or not presented in a timely manner. *See* Ariz.R.Crim.P. 32.1(d)-(h), 32.2(b), 32.4(a).

A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729–30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n. 1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n. 1; *see also Gray v. Netherland,* 518 U.S. 152, 161-62 (1996).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged

constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

Cause is defined as a "legitimate excuse for the default," and prejudice is defined as "actual harm resulting from the alleged constitutional violation." *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991); *see Murray v. Carrier*, 477 U.S. 478, 488 (1986) (a showing of cause requires a petitioner to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule"). Prejudice need not be addressed if a petitioner fails to show cause. *Thomas*, 945 F.2d at 1123 n.10. To bring himself within the narrow class of cases that implicate a fundamental miscarriage of justice, a petitioner "must come forward with sufficient proof of his actual innocence" *Sistrunk v. Armenakis*, 292 F.3d 669, 672-73 (9th Cir. 2002) (internal quotation marks and citations omitted), which can be shown when "a petitioner 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 673 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

D. Standard of Review: Merits

Petitioner's habeas claims are governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997) (holding that AEDPA governs federal habeas petitions filed after the date of its enactment, April 24, 1996). The AEDPA established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reduc[ing] delays in the

execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' ... demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (quoting *Lindh*, 521 U.S. at 333 n. 7).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005). The court of appeals rejected Petitioner's claims on the merits in a reasoned opinion, and the state supreme court denied them without comment. (Exs. A, C.) Under the "look through" doctrine, Petitioner's claims are deemed to have been rejected for the same reasons given in the last reasoned decision on the merits, which in this case was the court of appeal's opinion. *See Ylst*, 501 U.S. at 802-06.

"The threshold question under AEDPA [is] whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became

- 10 -

final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under

subsection (d)(1), the Court must first identify the "clearly established Federal law," if

any, that governs the sufficiency of the claims on habeas review. "Clearly established"

federal law consists of the holdings of the Supreme Court at the time the petitioner's

state-court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*,

549 U.S. 70, 74 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), *overruled

on other grounds Lockyer v. Andrade*, 538 U.S. 63 (2003). Habeas relief cannot be

granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional

principle advanced by a petitioner, even if lower federal courts have decided the issue.

*Williams*, 529 U.S. at 381; *see Musladin*, 549 U.S. at 76-77; *Casey v. Moore*, 386 F.3d

896, 907 (9th Cir. 2004). Nevertheless, while only Supreme Court authority is binding,

circuit court precedent may be "persuasive" in determining what law is clearly

established and whether a state court applied that law unreasonably. *Clark*, 331 F.3d at

1069.

The Supreme Court has provided guidance in applying each prong of §

2254(d)(1). The Court has explained that a state-court decision is "contrary to" the

Supreme Court's clearly established precedents if the decision applies a rule that

contradicts the governing law set forth in those precedents, thereby reaching a conclusion

opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set

of facts that is materially indistinguishable from a decision of the Supreme Court but

reaches a different result. *Williams,* 529 U.S. at 405–06; *see Early v. Packer,* 537 U.S. 3,

8 (2002) (*per curiam*). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams,* 529 U.S. at 406; *see Lambert v. Blodgett,* 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state-court decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan,* 550 U.S. at 473; *Visciotti,* 537 U.S. at 25.

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state-court decision was based upon an unreasonable determination of the facts. *Miller–El v. Dretke,* 545 U.S. 231, 240 (2005) (*Miller–El II* ). A state-court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El,* 537 U.S. 322, 340 (2003) ( *Miller–El I* ); *see Taylor*, 366 F.3d at 999. In considering a

challenge under § 2254(d)(2), state-court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan,* 550 U.S. at 473–74; *Miller–El II,* 545 U.S. at 240.

**ANALYSIS**

E.  Timeliness

Petitioner had until one year after his conviction and sentence became final to file his federal petition. Respondents do not contest the timeliness of the Petition. Upon review of the state-court record, the Court finds that, pursuant to the AEDPA, the Petition is timely.

F.  Ground One

In Ground One, Petitioner alleges that he was denied due process and a fair trial by prosecutorial misconduct in violation of the Fifth, Sixth, and Fourteenth Amendments. Petitioner notes several instances of prosecutorial misconduct in the Petition which this Court addresses separately as claims (A) through (D) under Ground One: (A) the malicious and deliberate use of improper and prejudicial references during the course of trial relating to evidence the prosecutor knew would not be presented at trial; (B) the prosecutor's violation of disclosure and discovery obligations; (C) the prosecutor's pattern of egregious behavior permeating the entire trial, including a harassing, abusive, unethical pattern of behavior, "constant non-verbal communication with the jury, continual violations of the court's order prohibiting speaking object[ion]s, gesturing and

making facial gestures toward defense counsel, and defendant" and "other theatrics"; and (D) the prosecutor's "absolute contradiction of his avowal made to the court that he would not argue that a key defense witness was mistaken." (Petition, at 6.)

> 1. *Ground One (A): The prosecutor's use of improper and prejudicial references during trial.*

Pursuant to Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is obligated to specify in a federal habeas petition all grounds for relief, as well as the facts supporting each of these grounds. *See Mayle v. Felix*, 545 U.S. 644, 661 (2005) (observing that Rule 2(c) requires pleading "separate congeries of facts" in support of each ground for relief); *Blackledge v. Allison*, 431 U.S. 63, 75 n. 7 (1977) (observing that "notice" pleading in habeas is insufficient and that petition "is expected to state facts that point to a 'real possibility of constitutional error' ") (quoting Advisory Committee Note to Rule 4, Rules Governing Section 2254 Cases). Martinez's Petition is defective because it does not provide enough specific facts in support of Ground One (A), to enable a court to tell from the face of the Petition whether further habeas review is warranted. *See Shepherd v. Nelson*, 432 F.2d 1045, 1046 (allegation that petitioner was deprived of his rights and cross-examination was properly dismissed as a bare conclusion, unsupported by allegations of underlying fact); *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990) (holding that "in order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition

merits further habeas corpus review."); *see also* Rules Governing Section 2254 Cases In The United States District Courts 2(c), 4 (1996). The Petitioner's allegation that the malicious and deliberate use of improper and prejudicial references during the course of trial relating to evidence the prosecutor knew would not be presented at trial lacks the specificity required for this court to analyze his claim without an exhaustive factual review of the entire state court record. Petitioner does not identify what statements made by the prosecutor were improper or constituted misconduct, and how such statements caused him prejudice. In fact, in order to address this claim on the merits, the Respondents considered the allegedly offending statements that Petitioner had identified in his state appellate-court brief. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970). Accordingly, the Magistrate Judge recommends that the District Court dismiss Ground One (A).

### 2.     *Ground One (B): Disclosure Obligations*

As the undersigned found in Ground One (A), Petitioner's allegation that the prosecutor "repeatedly violated his disclosure and discovery obligations" also lacks the specificity required for this court to analyze his claim without an exhaustive factual review of the entire state court record. Petitioner does not identify what discovery and disclosure violations amounted to prosecutorial misconduct in this Petition, or how he was harmed by the State's failure to disclose. As in Ground One (A), in order to address the claim at all, Respondents again were required to ascertain Petitioner's claims by

referring to the claims argued in Petitioner's opening brief to the state court of appeals. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. *Boehme,* 423 F.2d at 1058. Accordingly, the Magistrate Judge recommends that the District Court dismiss Ground One (B).

### 3.    Ground One (C)

Petitioner contends that the prosecutor engaged in a "harassing, [abusive], unethical pattern of behavior, including constant non-verbal communication with the jury, [and] gesturing and making facial gestures toward defense counsel, . . . and other theatrics designed to demean and degrade the defense in the eyes of the jury." (Petition at 6.)

### a.    Ground One (C): Procedural Default

Respondents argue that Petitioner's citation to the Fourteenth Amendment and *Darden   v. Wainwright*, 477 U.S. 168 (1986), in the final sentence of his argument on direct appeal was insufficient to state a proper federal law basis for this claim in the state courts. (Answer, at 26, citing Ex. D, at 42.)

Petitioner argued in his opening brief to the appellate court that the prosecutor "engaged in a pattern of misconduct so egregious that it permeated the entire trial, from opening statement to closing arguments, depriving Mr. Martinez of a fair trial." (Ex. D, at 29.) Alone, this general appeal to deprivation of a fair trial is insufficient to establish exhaustion of a federal claim. *See Gray*, 518 U.S. at 162 ("[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the

'substance' of such a claim to a state court."). The Court finds, however, that Petitioner's

contention, in the last sentence of his argument regarding prosecutorial misconduct, that

his "right[] to a fair trial guaranteed him under the due process clause of the fourteenth

amendment to the U.S. Constitution" and accompanying citation to the applicable clearly

established federal law *Darden v. Wainwright*, 477 U.S. 181 (1986), suffices to exhaust

Petitioner's Fourteenth Amendment due process claim. *See Baldwin v. Reese*, 541 U.S.

27, 32 (2004)(A litigant wishing to raise a federal issue can easily indicate the federal law

basis for his claim in a state-court petition or brief, for example, by citing in conjunction

with the claim the federal source of law on which he relies or a case deciding such a

claim on federal grounds, or by simply labeling the claim "federal.") Petitioner, however,

did not exhaust his claims of violations of the Fifth and Sixth Amendments, and those

claims are procedurally defaulted.

### b.      Ground One (C): Merits

The "clearly established Federal law" relevant to Petitioner's claims regarding

prosecutorial misconduct is the Supreme Court's decision in *Darden,* 477 U.S. 168,

which explained that a prosecutor's improper comments will be held to violate the

Constitution only if they " 'so infected the trial with unfairness as to make the resulting

conviction a denial of due process.' " *Parker v. Matthews*, --- U.S. ---  132 S.Ct. 2148,

2153 (2012) (quoting *Darden*, 477 U.S. at 181); *Donnelly v. DeChristoforo*, 416 U.S.

637, 643 (1984). Even if prosecutorial misconduct is established, on habeas review a

federal court will not disturb a conviction unless the alleged prosecutorial misconduct had

a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993) (citation and internal quotations omitted); *see Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (*Brecht* applies to claim of prosecutorial misconduct).

Because the prosecutor's nonverbal conduct described by Petitioner was not captured in the written record, the appellate court resolved this claim by deferring to the trial court's determination that the prosecutor's conduct did not warrant a mistrial or a new trial. (Doc. A, at ¶36.)

Under the AEDPA, state-court findings of fact are given considerable deference. *See* 28 U.S.C. § 2254(d)(2). Petitioner has not demonstrated that the state court's findings that the prosecutor's conduct at trial did not constitute misconduct was unreasonable in light of the evidence presented to the state court. "A federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (internal citation omitted). The habeas court presumes that the state court's factual determinations are correct, and Petitioner bears the burden of rebutting this presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1) (stating that "a determination of factual issues made by a[s]tate court shall be presumed to be correct" and observing that "the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"); *Williams v. Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004). Petitioner does not indicate which facts

from the state-court's order are incorrect, nor does he provide any citations to the record that support another version of the facts; therefore, he fails to carry his burden of demonstrating by clear and convincing evidence that the state court's findings of fact are unreasonable. Accordingly, Petitioner is not entitled to relief on Ground One (C).

### 4.    *Ground One (D)*

Petitioner claims that the prosecutor acted in contradiction of his avowal made to the court that he would not argue that a key defense witness was mistaken. This claim lacks sufficient specificity to merit federal review. The Court cannot determine from this short statement what "key defense witness" was mistaken, and when, during Petitioner's twenty-three-day trial, the prosecutor made this avowal. Accordingly, for the same reasons stated in Ground One (A) and (B), the Magistrate Judge recommends dismissing Ground One (D).

Alternatively, reviewing Petitioner's appellate brief to determine the factual basis for this claim, Petitioner argued that the prosecutor stated, just prior to the end of trial, that it was not necessary to call Herman Moreno as a witness because the prosecutor would not argue that Maria Alvarez, a waitress who testified she waited on Cornejo after the time that prosecution witnesses testified he was beaten and kidnapped, was mistaken. (Ex. D, at 17-18.) Petitioner argued that contrary to the prosecutor's avowal to the court, the prosecutor told the jury that Alvarez had seen Cornejo on a different night, and that Cornejo was not at the restaurant on the night Cornejo was abducted.  (*Id.*) Petitioner failed to exhaust this claim, however, by asserting a federal-law basis for this claim. In

fact, while Petitioner recited the facts of this claim in his brief, he did not argue in the "Argument" section of his brief that the prosecutor's argument contrary to his avowal violated any law, state or federal. Petitioner failed to fairly present Ground One (D) as a federal claim in state court. If Petitioner were to return to state court now to litigate this claim it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz.R.Crim.P. 32.2(b); 32.1(d)-(h). The Ninth Circuit has held that Arizona's procedural rules, including its timeliness rule, are "clear" and "well-established." *Simmons v. Schriro*, 187 Fed. Appx. 753, 754 (9th Cir. 2006); *see also Ortiz,* 149 F.3d at 931-32 (addressing Arizona's waiver rule); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997) (same); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) (same); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (same). Therefore, because Petitioner's claim was procedurally defaulted on independent and adequate state law grounds, the Court will not review it.  *See Coleman*, 501 U.S. at 729, ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."). This claim is technically exhausted but procedurally defaulted. Petitioner filed no reply, and presents no cause for the default. Accordingly, Ground One (D) is properly dismissed.

In sum, the Arizona Court of Appeal's rejection of Petitioner's prosecutorial misconduct claim did not contradict or unreasonably apply binding United States

Supreme Court precedent and the state appellate court's ruling was not otherwise based on any unreasonable factual determination. *See, e.g.*, 28 U.S.C. § 2254(d). The Magistrate Judge recommends that the District Court, after its independent review, dismiss Ground One (A) through (D).

### G. Ground Two

In Ground Two, Petitioner contends that he was "denied a fair trial, due to the fact that the joinder of the twenty-eight individual counts with each other, and with the criminal enterprise count was so improper and prejudicial." (Petition at 7.) He claims violations of the Fifth, Sixth, Eighth, and Fourteenth Amendments. (*Id.*)

#### 1.    Ground Two: Procedural Default

Respondents argue that Petitioner did not properly assert a federal-law basis for this claim in the state courts. Respondents maintain that, although Petitioner asserted that the joinder of claims denied him a fair trial "in violation of the Sixth and Fourteenth Amendments to the United States Constitution," he made no argument to support that claim, instead arguing only that joinder was improper under state law. (*Id*. at 43.)

Respondents argument is not entirely supported by a review of the record. In addition to arguing that the joinder of claims was in violation of state law, Petitioner also argued that he was denied a fair trial under the Constitution, citing *Bean v. Calderon*, 163 F.3d 1073, 1084 (1998). The Ninth Circuit Court of Appeals explained in *Bean* that misjoinder must result in prejudice so great as to deny a petitioner his right to a fair trial in order to find that petitioner suffered a constitutional violation. *Id*. (quoting *United*

*States v. Lane*, 474 U.S. 438, 446 n. 8 (1986)). Accordingly, the Magistrate Judge finds that Petitioner properly exhausted a claim that his due process rights under the Fourteenth Amendment were violated. Petitioner, however, did not exhaust his claims of violations of the Fifth, Sixth, and Eighth Amendments, and those claims are procedurally defaulted.

### 2.    Ground Two: Non-Cognizable Claims

To the extent that Petitioner may have exhausted a Fifth Amendment due process claim, it is not cognizable. It is the Fourteenth Amendment, not the Fifth Amendment, that protects a person against deprivations of due process by a state. *See* U.S. Const. amend XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property without due process of law."); *Castillo v. McFadden*, 399 F.3d 993, 1002 n. 5 (9th Cir. 2005)("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States...."). Because the Fifth Amendment Due Process Clause does not provide a cognizable ground for relief regarding Petitioner's state court conviction, his allegation that the Fifth Amendment Due Process Clause was violated must be dismissed.

To the extent that petitioner is contending that the trial court should not have joined the charges as a matter of state law, his claim is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (reiterating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("A

federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution."); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Further, the improper consolidation of cases does not, in itself, violate the federal Constitution. *Lane*, 474 U.S. at 446 n. 8; *see also, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (severance of co-defendants' trial is warranted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence"). *Lane* considered only the effect of misjoinder under Federal Rule of Criminal Procedure 8, and expressly stated that no constitutional claim had been presented. *See Lane*, 474 U.S. at 446 & n. 9. *Lane's* broad statement that misjoinder could only rise to the level of a constitutional violation if it was so prejudicial as to violate due process, was dicta. *Collins v. Runnels*, 603 F.3d 1127, 1132 (2010). Prior to *Collins*, the Ninth Circuit applied a pre-AEDPA standard of review based either on what *Collins* has described as dicta from the Supreme Court's decision in *Lane*, 474 U.S. at 438 (*see Bean*, 163 F.3d at 1084) or on Ninth Circuit precedent unsupported by any Supreme Court authority (*see Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir.1991)), and thus do not provide the clearly established federal law required to support a grant of habeas relief. *See Williams*, 529 U.S. at 412 (clearly established federal law comes from Supreme Court holdings, not dicta).

The undersigned is unaware of any published authority applying the reasoning of

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Collins*, which addressed the misjoinder of parties, not claims, specifically to the misjoinder of claims. The Ninth Circuit has done so, however, in an unpublished case. *See Brewer v. Adams*, 412 F. App'x 30, 32 (9th Cir. 2011)[2] (finding the Supreme Court's comments in *Lane* to be dicta, and concluding that joinder of charges was not in violation of clearly established Supreme Court precedent). The Supreme Court has never held that a trial court's failure to provide separate trials on different charges implicates a defendant's right to due process. Only Supreme Court holdings are controlling when reviewing state court holdings under 28 U.S.C. § 2254; Court dicta and circuit court authority may not provide the basis for granting habeas relief. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Accordingly, habeas relief on this claim must be denied. *See Musladin*, 549 U.S. at 77 ("Given the lack of holdings from this Court regarding" the claim, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.' " (alterations in original); *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.").

      H. <u>Ground Three</u>

      In Ground Three, Petitioner alleges that he was denied a fair trial and due process in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by the trial

---

[2] Cited for its persuasive value pursuant to Ninth Circuit Rule 36–3.

court's denial of a motion for new trial due to lack of venue.[3] (Petition at 8.)

Respondents contend that Petitioner failed to exhaust the federal-law basis for this claim in state court.  A review of the opening brief confirms that Petitioner did not alert the state courts to the federal legal theory of his claim. Petitioner failed to fairly present Ground Three as a federal claim in state court. If Petitioner were to return to state court now to litigate this claim it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz.R.Crim.P. 32.2(b); 32.1(d)-(h). Therefore, because Petitioner's claim was procedurally defaulted on independent and adequate state law grounds, the Court will not review it.  *See Coleman*, 501 U.S. at 729, ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."). This claim is technically exhausted but procedurally defaulted. Petitioner filed no reply, and presents no cause for the default. Accordingly, Ground Three is properly dismissed.

I.   Ground Four

In Ground Four, Petitioner alleges that the trial court erred in admitting into evidence a "drug ledger," denying Petitioner a fair trial in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. (Petition at 9.) Respondents concede that Petitioner raised this claim in state courts alleging a violation of *Crawford v. Washington*,

---

[3] The court of appeals agreed that two of the counts lacked venue in Pima County and vacated those convictions and sentences. (Ex. A, at ¶¶ 50-51.)

541 U.S. 36 (2004), and has therefore properly exhausted this claim.

The Arizona Court of Appeals described the ledger admitted at trial:

[The] ledger, apparently containing a record of drug transactions, [was] found in the truck Vera had used to travel to Tucson to deliver marijuana to Martinez in exchange for Cornejo's release. The ledger contained the names "Flaco" and "Tio," ostensibly referring to Martinez and his father, and appeared to document drug transactions among Martinez and his father and Cornejo and Chavez.

(Exhibit A, at ¶ 52.) The court of appeals did not decide whether admission of the "drug ledger" was error. (*Id.* at ¶ 53.) Instead, it determined that any error in admitting the ledger was harmless beyond a reasonable doubt. (*Id.*) Respondents urge this Court to find that the court of appeals' finding that any error was harmless was objectively reasonable.

"On habeas review, constitutional errors of the 'trial type,' including prosecutorial misconduct, warrant relief only if they 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Brecht,* 507 U.S. at 637–38). This Court should "apply the *Brecht* test without regard for the state court's harmlessness determination." *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir.2010) (citing *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007)). Since the Court is required to apply the *Brecht* test, the Court rejects respondents contention that the Court should determine that the appellate court's harmless determination was objectively unreasonable under 28 U.S.C. § 2254(d)(a).

Assuming admission of the drug ledger was error, the Magistrate Jude finds that "[i]n light of the record as a whole" that the trial court's admission of the ledger did not have a "substantial and injurious effect or influence in determining the jury's verdict."

The state court made the following factual findings: "[b]eyond the allegations regarding the criminal-enterprise charge, Martinez was charged with no drug offenses, but there was ample evidence apart from the ledger supporting the allegations of drug trafficking made in support of the criminal-enterprise charge. Moreover, the jury found Martinez guilty of several crimes that served as predicate offenses for the criminal-enterprise charge." Petitioner does not dispute these factual findings of the state court, or point to any evidence in the record before the state court that would suggest this factual finding was unreasonable. Thus, Petitioner fails to carry his burden of demonstrating by clear and convincing evidence that the state court's findings of fact are unreasonable, and these facts demonstrate that any error in admission of the ledger was harmless.

Petitioner argues that no evidence was presented to demonstrate who wrote the ledger, or that Petitioner knew the owner of the vehicle in which the ledger was found. Petitioner also seems to suggest that the State failed to establish a proper foundation that the "nick names" inside the ledger referred to Petitioner. Though these arguments may support a finding that the ledger was erroneously admitted, under *Crawford,* 541 U.S. 36, Petitioner has not shown that the admission had a substantial and injurious effect or influence in determining the jury's verdict under *Brecht*. *See Wood*, 693 F.3d 1113.

Accordingly, the Magistrate Judge recommends that the District Court find that the admission of the drug ledger, even if a constitutional violation, did not have a "substantial and injurious effect or influence in determining the jury's verdict" and dismiss Ground Four of the Petition.

J. <u>Ground Five</u>

In Grounds Five, Petitioner alleges that he was denied a fair trial, due process, and the right to confront witnesses in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Respondents concede that Petitioner raised this claim in the state courts, alleging a *Crawford* confrontation violation, (Ex. D, at 54–57), and has therefore, properly exhausted this claim.

Petitioner argues the trial court erred in allowing into evidence the statements of four men who did not appear as witnesses. (Petition, at 9.1.) The statements were admitted through Vera and Yssenia's testimony. (Ex. A, at ¶54.) The statements were from the four men who participated in obtaining marijuana to transport to Tucson to obtain Cornejo's release from Petitioner. (*Id.* at ¶54.) Petitioner argues that the State prevented Petitioner from interviewing these four men because they were listed as victims,[4] and was unable to cross-examine them because the State chose not to call them at trial. (Petition, at 9.1.)

In *Crawford*, the United States Supreme Court established that out-of-court testimonial statements are barred unless a defendant has an opportunity to cross-examine the declarant regarding the statements. 541 U.S. at 68. Statements by co-conspirators are not, however, testimonial. *Id.* at 56; *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005). The court of appeals rejected Petitioner's contention that admission of the statements violated his confrontation rights, because the statements were "in furtherance

---

[4] The trial transcript suggests that only one of the individuals, Escajeda, was listed as a victim. (Ex. M, R.T. 5/24/07 at 96.)

of a conspiracy," as "not testimonial" and a hearsay exception, under *Crawford,* 541 U.S. 36, and because "[A]n incriminating statement in furtherance of [a] conspiracy would probably never be … testimonial. The co-conspirator hearsay rule does not pertain to a constitutional right . . . ." (Ex. A, ¶58, n.13) (quoting *Giles v. California*, 554 U.S. 353, 374, n.6 (2008). The court rejected Petitioner's argument that these four individuals were not co-conspirators because they had no "single goal" in common with him, finding that the statements in question were admissible because all of the individuals were involved in a "conspiracy to transport illegal drugs," the goal of which was to transport marijuana to Petitioner to secure Cornejo's release. (Exhibit A, at ¶ 58.)

The state court's finding of a conspiracy was objectively reasonable based on the evidence presented: "Martinez demanded from those individuals, as ransom for Cornejo, a delivery of marijuana. Consistent with those demands, the individuals obtained marijuana and delivered it to Martinez. This constituted a conspiracy to transport illegal drugs, and Vera's and Yssenia's testimony about the four men's out-of-court statements therefore did not constitute hearsay." (Exhibit A, at ¶ 58.) Although Petitioner asserts that these four individuals denied any involvement in the incident prior to trial, Petitioner does not dispute the evidence that demonstrated that these four individuals were part of the conspiracy. The State argued to the trial court that these four individuals were part of the conspiracy and highlighted for the court relevant evidence demonstrating their membership in the conspiracy: The first individual, Chavez was the owner of the green truck that Vera drove to Tucson, carrying approximately five hundred pounds of

marijuana, and reported the truck had been taken close in time to the murder of Cornejo, suggesting he had inside information that it had been done. (Ex. A, at ¶5; *see also* Ex. M, Reporter's Transcript ("R.T.") 5/24/07 at 91.) Additionally, the drug ledger was found inside his truck, and Chavez's son identified the writing as his father's handwriting. (Ex. M, R.T. 5/24/07 at 91.) Vera testified that the second individual, Penuelas, played a role in helping to obtain the marijuana, and Yssenia, Cornejo's wife, testified that she called Penuelas and the third individual, Chune, because they were the people that were closest to her husband and his dealings. (*Id.* at 92.) Additionally, Yssenia testified that Penuelas called her later in the evening and told her that she needed to call the police and report Cornejo as missing. (*Id.* at 94.) The fourth individual, Escajeda, was responsible for driving the sample of marijuana to the shop at the time of the kidnapping, and was jumped when he walked in. (*Id.* at 94-95.) Vera saw the resulting injuries on Escajeda, and that he was "in the middle of the deal" throughout the course of the evening. (*Id.* at 95.) Additionally, Escajeda was Chune's driver in Cornejo's drug business. (*Id.* at 95.)

The court of appeals' noted that Petitioner did not argue that the individuals statements are inadmissible hearsay because their participation in the conspiracy to deliver marijuana to Martinez was unwilling, prompted only by Petitioner's kidnapping of Cornejo, noting that "for a coconspirator's participation in a conspiracy to be involuntary due to duress, that duress must be sufficient to 'overbear [the coconspirator's] will.'" (Ex. A, at ¶58, n.12.)(quoting *United States v. Freeman*, 208 F.3d 332, 342 (1st Cir. 2000)).

Moreover, even if the statements were erroneously admitted, Petitioner has failed to demonstrate that the trial court's admission of the statements had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 637–38

The Magistrate Judge recommends that the District Court find the state court's determination, that admission of the statements by these four co-conspirators was not in violation of Petitioner's confrontation rights under *Crawford*, objectively reasonable. Additionally, the Magistrate Judge recommends that the District Court find that even if the admission of the statements was in violation of Petitioner's right to confrontation, Petitioner has failed to demonstrate prejudice under *Brecht*, 507 U.S. 637–38. Because Petitioner has failed to satisfy the standard for habeas relief, the undersigned recommends that the claim in Ground Five be denied.

### K. Ground Six

In Ground Six, Petitioner alleges that his Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated by the admission of identification evidence. Petitioner argues the court erred by allowing Vera to identify Petitioner at trial after Vera failed to identify Petitioner in a photograph line-up in December 2005, but later identified Petitioner during a deposition at which he was the only attendant in jail clothing and restraints, in January 2006. Respondents concede that Petitioner properly exhausted this claim. (Answer, at 13-14.)

The trial court held a suppression hearing, at which Vera and Detective Steven

Bunting testified. (Ex. F, R.T. 01/25/07 ) Vera testified that, following her arrest on methamphetamine charges on December 15, 2005, she participated in a "free talk" at the Attorney General's Office on January 26, 2006, with Detectives Bunting and Soward. (*Id.* at 11, 17-18, 21, 42.) Vera was also shown a photographic line-up, and was asked about the person she had seen on the Saturday before Tony Cornejo was murdered. (*Id.* at 22.) Vera stated she had seen number four in the lineup, but "wasn't 100 percent certain." She agreed that she told the detective: "I don't know. Like, I've seen that face before, but I don't think that was the one that was there because the other one, I remember he was really skinny." (*Id.* at  23.) Vera testified that Detective Bunting told her that "of course he looks different. … that photograph only shows the person from the neck up, right?" (*Id.* at 23-24.) Vera didn't feel like the officers were arguing with her and "didn't pressure [her] to sign anything." (*Id.* at 38.)  Vera stated that she "really couldn't sign it because [she] wasn't 100 percent sure." (*Id.* at 38.)

Vera testified that when she appeared for her deposition, she recognized the man she had "thought of as 'Flaco'" when she walked into the courtroom for her deposition. (Ex. F, R.T. 01/25/07 at 13.) During a break, she informed Detective Bunting that she recognized the Petitioner. (*Id.*) Detective Bunting testified that Vera was "upset" and "somewhat shaken by having seen him." (*Id.* at 45.) Vera agreed that Petitioner was the only person in the courtroom dressed out as an inmate in orange and shackles, but testified that she based her recognition from seeing him the night before Cornejo was killed. (*Id.* at 13-16.)

An audio recording of the interview with Vera when she was shown the photographic lineup was also submitted to the court for the court's review. (*Id.* at 56-57.) Following a review of the audio recording, the trial court issued an order denying the motion to suppress the identification:

> In the instant case, Ms. Vera's first indication that she recognized Mr. Martinez came without any prompting from law enforcement. Her desire to be certain and the discussions which followed do not change the fact that Ms. Vera recognized the defendant but felt she was less than 100% positive. Nothing about that first glint of recognition rendered the procedure as unduly suggestive. The follow-up comments and involvement can be easily raised on cross-examination. The later in-deposition show-up corroborates the identification. The jury may consider the later circumstances in judging the certainty of Ms. Vera without any implication of a due process violation.

(Ex. G.)

Addressing Petitioner's claims that the procedure at the photographic lineup was impermissibly suggestive because the police "did not accept [Vera's] answers" that she was not the man she recognized was the same man she had seen at Cornejo's shop and instead "argued with her," the appellate court found that the detectives conduct did not render the procedure unduly suggestive because: "before the detectives made any comments, Vera already had stated she recognized Martinez's photograph. And their comments did not prompt her to change her position that she was not positive the photograph depicted the man she had seen at Cornejo's shop." (Ex. A, at ¶63.)

The appellate court also rejected Petitioner's argument that Vera's identification of him at her deposition was unduly suggestive because she had failed to identify him at the photographic lineup because, unlike the cases cited by Petitioner where nothing

suggested the witnesses indicated any recognition of the defendants during the first lineup[5], "[h]ere, Vera stated during the photographic lineup that she recognized Martinez, although she declined to identify him positively as the man she had seen at Cornejo's shop." Additionally, the appellate court noted that a significant amount of time had passed between the photographic lineup and her positive identification of Petitioner at the deposition, and concluded that "the trial court did not abuse its discretion in determining Martinez had failed to demonstrate the procedure used was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"

Under clearly established Supreme Court law, identification procedures that are "unnecessarily suggestive and conducive to irreparable mistaken identification" are prohibited by the Due Process Clause of the U.S. Constitution. *Stovall v. Denno,* 388 U.S. 293, 302 (1967), *overruled on other grounds by Griffith v. Kentucky,* 479 U.S. 314 (1987). Although due process requires the exclusion of an eyewitness identification obtained through police-arranged procedures that make it "all but inevitable that [the witness] would identify [the defendant]" *Foster v. California*, 394 U.S. 440, 443 (1969), suppression of an eyewitness identification of a photographic lineup is required only when "the photographic identification procedure was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377 (1968). Although one-on-one identifications are suggestive, *see Stovall*, 388 U.S. at 302, the "admission of evidence of a showup without more does

---

[5] *State v. Via*, 146 Ariz. 108 (1985); *Thigpen v. Cory*, 804 F.2d 893 (6th Cir. 1986) abrogated by *Perry v. New Hampshire*, --- U.S. ---, 132 S.Ct. 716 (2012).

not violate due process." *Neil v. Biggers*, 409 US. 188, 198 (1972). A suggestive identification violates due process if it was unnecessary or "gratuitous" under the circumstances. *Id.* at 198. Moreover, the Supreme Court has recently ruled that "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances *arranged by law enforcement*." *Perry v. New Hampshire*, ---U.S. ---, 132 S.Ct. 716, 730 (2012)(emphasis added). Exclusion of evidence is appropriate only "to deter law enforcement use of improper lineups, showups, and photo arrays." *Id.* at 726.

The state court's decision does not violate clearly established federal law. In this case, the trial court listened to the testimony and reviewed the audio tape of the photographic identification and concluded that nothing about Vera's first recognition of Petitioner in the photographic lineup was unduly or impermissibly suggestive. Because the photographic lineup was not unduly or impermissibly suggestive, the Court need not consider whether there was a substantial likelihood of irreparable misidentification. Any comments by the detectives that occurred after Vera recognized Petitioner were appropriately relegated to the topic of cross-examination. Petitioner has not shown that this finding, adopted by the appellate court, was objectively unreasonable.

Neither of the procedures that took place here was unduly suggestive and especially likely to yield "irreparable mistaken identification." *Stovall v. Denno*, 388 U.S. at 302. The appellate court reasonably concluded that Vera's identification of Petitioner

at the deposition was not unduly suggestive because she had recognized Petitioner at the photographic lineup and because considerable time had passed between the deposition and the lineup. The court found the likelihood of irreparable misidentification insubstantial because Vera had already identified Petitioner. Again, the state court's application of clearly established law was not objectively unreasonable. Petitioner does not argue that the suggestive circumstances of Petitioner being the only person shackled and in orange prison attire at the deposition was improper or arranged by law enforcement. Accordingly, no preliminary inquiry into the reliability of the identification at the deposition was even necessary, and no due process violation occurred.

Because Petitioner has failed to satisfy the standard for habeas relief, the undersigned recommends that the claim in Ground Six be denied.

## IV.   RECOMMENDATION

The Magistrate Judge recommends that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED and DISMISSED WITH PREJUDICE.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed.R.Civ.P. 72(b). No reply to any response shall be filed. *See id.* If objections are filed the parties should use the following case number: **CV 12-0254-TUC-JGZ.**

If objections are not timely filed, then the parties' right to de novo review by the District Court may be deemed waived.

Dated this 12th day of March, 2014.

_____
Bernardo P. Velasco
United States Magistrate Judge